Slip Op. **15-128**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN POWER PULL CORP.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant. | Before: Mark A. Barnett, Judge<br><br>Court No. 14-00088 |

<u>OPINION</u>

[The court grants Defendant's Motion to Dismiss and Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.]

Dated: November 16, 2015

*Andrew J. Ayers*, Bahret & Associates Co., L.P.A., of Holland, OH, for plaintiff.

*Justin R. Miller*, Senior Trial Counsel, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *Amy M. Rubin* and *Claudia Burke*, Assistant Directors. Of Counsel on the brief was *Beth C. Brotman*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Barnett, Judge:  Defendant, the United States, moves, pursuant to USCIT Rules

12(b)(1) and 56, to dismiss allegations of subject matter jurisdiction pursuant to 28

U.S.C. § 1581(i) in the Complaint of Plaintiff, American Power Pull Corporation, and for

summary judgment on all remaining claims brought pursuant to 28 U.S.C. § 1581(a).

Def.'s Mot. to Dismiss for Lack of 28 U.S.C. § 1581(i) Subject Matter Jurisdiction; Def.'s

Mot. for Summ. J; & Def.'s Mot. to Stay Further Disc. (collectively "MSJ"), ECF No. 26.[1]

Plaintiff concedes that this court lacks subject matter jurisdiction under 28 U.S.C.

§ 1581(i).  Pl.'s Mem. in Opp'n to Def.'s Dispositive Mots. & Cross-Mot. for Summ. J.

("XMSJ") at 2, ECF No. 28.  The Court therefore grants Defendant's Motion to Dismiss.

Plaintiff cross-moves for summary judgment.  XMSJ at 2-6.  For the reasons below, the

Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion

for Summary Judgment.

BACKGROUND

On May 24 and June 14, 2006, Plaintiff made two entries of industrial hand

trucks, manufactured by Qingdao Taifa Group Company, Limited[2] ("Qingdao Taifa"),

from the People's Republic of China.  Compl. Ex. B at 1, ECF No. 2-2.  The

merchandise was subject to an antidumping duty order ("2004 AD Order").  *Hand*

*Trucks and Certain Parts Thereof from the People's Republic of China*, 69 Fed. Reg.

65,410 (Dep't of Commerce Nov. 12, 2004) (2004 amended final determination).

Previously, on November 17, 2004, the Department of Commerce ("Commerce") had

directed U.S. Customs and Border Protection ("Customs") to collect cash deposits of

estimated antidumping duties on imports of hand trucks manufactured by Qingdao Taifa

at a rate of 26.49 percent pursuant to the 2004 AD Order.  MSJ Ex. A.  Plaintiff made

---

[1] Defendant also moves to stay discovery.  MSJ at 15-16.  The court stayed discovery in this matter on May 13, 2015.  ECF No. 27.
[2] Qingdao Taifa Group Company, Limited also is known as Qingdao Taifa Group Import & Export Company.  MSJ at 2 n.1.

proper cash deposits for both entries.  At the time of entry, Customs issued notices of

suspension of liquidation specific to Plaintiff's entries.  MSJ at 3.

On February 2, 2007, Commerce commenced an administrative review of the

antidumping duty order for the period of December 1, 2005, through November 30,

2006 ("the second period of review").  *Initiation of Antidumping and Countervailing Duty*

*Administrative Reviews and Request for Revocation in Part*, 72 Fed. Reg. 5005 (Dep't

of Commerce Feb. 2, 2007).  Pursuant to the initiation of that administrative review,

Commerce instructed Customs to "continue to suspend liquidations" for "imports of hand

trucks and certain parts thereof from" the PRC "entered or withdrawn from warehouse,

for consumption on or after May 24, 2004."  MSJ Ex. B (Admin. Message No. 4288203

from Directors of Field Ops, Port Directors to Director AD/CVD & Revenue Policy &

Programs) ¶ 4.  On July 28, 2008, Commerce issued the final results of the

administrative review, which assigned a dumping margin of 383.60 percent to imports

from Qingdao Taifa ("Review Results") during the second period of review.  *Hand*

*Trucks and Certain Parts Thereof from the People's Republic of China*, 73 Fed. Reg.

43,684, 43,687 (Dep't of Commerce July 28, 2008) (2005-2006 administrative review

final results).

On August 13, 2008, Qingdao Taifa filed suit in this court, challenging the Review

Results and moving for a preliminary injunction to enjoin Customs from liquidating, *inter*

*alia*, American Power Pull's entries, at the 383.60 percent duty rate.  *Qingdao Taifa*

*Group Co., Ltd. v. United States*, Ct. No. 08-00245, Compl. ¶ 9, ECF No. 5, Mot. for

Prelim. Inj. to Enjoin Liquidation of Entries, ECF No. 7.  On August 22, 2008, the court

granted the preliminary injunction pending the final resolution of the action.  *See id*.

(order granting preliminary injunction), ECF No. 12.  After multiple remands, this court

sustained Commerce's amended final results, which revised the antidumping duty rate

to 145.90 percent for imports of hand trucks from Qingdao Taifa during the second

period of review, and the Court of Appeals for the Federal Circuit ("CAFC") affirmed this

decision on April 11, 2012.  *Qingdao Taifa Group, Co., Ltd. v. United States*, 35 CIT __,

780 F. Supp. 2d 1342 (2011), *aff'd*, 467 F. App'x 887 (Fed. Cir. 2012).  On June 15,

2012, Commerce published notice of the court decision and the amended final results.

*Hand Trucks From the People's Republic of China*, 77 Fed. Reg. 35,939 (Dep't of

Commerce June 15, 2012) (notice of court decision not in harmony with final results and

notice of amended final results).

On July 20, 2012, Commerce issued liquidation instructions to Customs covering

all imports from Qingdao Taifa during the second period of review, including American

Power Pull's entries.  The instructions informed Customs that the injunction enjoining

liquidation of the entries had dissolved and instructed Customs to liquidate, *inter alia*,

Plaintiff's entries at the court-affirmed rate of 145.90 percent.  MSJ Ex. E ¶¶ 1-2.

Customs liquidated the entries on August 10, 2012, assessing antidumping duties as

instructed.  Compl. ¶ 4; MSJ at 4.

Plaintiff timely protested the liquidations, claiming that the entries had liquidated

by operation of law, pursuant to 19 U.S.C. § 1504(b), at the cash deposit rates asserted

upon entry.  Compl. Exs. A, B.  On October 9, 2013, Customs denied the protests,

asserting that Plaintiff had confused suspending liquidation with extending liquidation in

its arguments.  Compl. Exs. C, D.  Plaintiff filed suit on March 31, 2014, again averring

that the entries had been deemed liquidated at their original cash deposit rates,

pursuant to 19 U.S.C. § 1504(b).  Compl.  The parties now cross-move for summary

judgment.  *See generally* MSJ; XMSJ.

## LEGAL STANDARD

The court will grant summary judgment only if "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law" based on

the "materials in the record."  USCIT R. 56(a), (c)(1).  The burden of establishing the

absence of a genuine issue of material fact lies with the moving party.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court must view the evidence in the

light most favorable to the non-movant and may not weigh the evidence or resolve

issues of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)

(citation omitted).  A genuine factual issue exists if, taking into account the burdens of

production and proof that would be required at trial, sufficient evidence favors the non-

movant such that a reasonable jury could return a verdict in that party's favor.  *Id.* at

248.

To defeat summary judgment once the moving party has met its burden, the

nonmoving party may not simply rely on the pleadings, but must "'cit[e] to particular

parts of materials in the record' to establish the 'presence of a genuine dispute'

warranting trial."  *Macclenny Prods. v. United States*, 38 CIT __, __, 963 F. Supp. 2d

1348, 1358 (2014) (brackets in original) (quoting USCIT R. 56(c)).  "'[I]f a party 'fails to

properly address another party's assertion of fact,' that assertion of fact may be deemed

'undisputed for purposes of the motion.'" *Id.* (quoting USCIT R. 56(e)(2)).  In other

words, there must exist more than "a scintilla of evidence" to support the non-moving

party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice, *see*

USCIT R. 56(e).  Similarly, "[w]hen opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it,

a court should not adopt that version of the facts" when ruling on the motion.  *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  The court has subject matter jurisdiction over this

matter pursuant to 28 U.S.C. § 1581(a).

DISCUSSION

## I.    Defendant's Contentions

Defendant contends that Plaintiff's suit "rests on the incorrect presumption that its

entries were never suspended and, as a result, the entries became deemed liquidated."

MSJ at 9.  Defendant argues that Plaintiff mistakenly applies 19 U.S.C. § 1504(b) to

support its claim that Customs' "final assessment of additional duties violated [the

statute] 'as the rate of duty, value, quantity, and amount of duties should be no greater

than the amount of the 2006 duties.'"  MSJ at 9 (quoting Compl. ¶ 6).  Defendant

counters that 19 U.S.C. § 1504(b) establishes Customs' authority to extend the

liquidation of an entry and is distinct from suspending liquidation.  MSJ at 9-10.

Defendant notes that Plaintiff's "theory of deemed liquidation appears to be premised on

an assumption that [Customs] extended the liquidation of its entries, and that after four

years from the date of entry, the purported extensions expired and the entries deemed

liquidated by operation of section 1504(b)."  *Id*.

Defendant asserts that, at the time of importation, the liquidation of the entries was suspended pursuant to 19 U.S.C. § 1673b(d)(2).  *Id*. at 9-11.  Defendant explains that once Commerce received a request for an administrative review, the suspension continued through the completion of the review, pursuant to 19 U.S.C. § 1675(a)(2), and when Qingdao Taifa challenged the results of the administrative review before the court, liquidation was further suspended, pending resolution of the action, pursuant to the preliminary injunction issued by the Court.  *Id*. at 11-12.  Defendant concludes that after the resolution of the action, the preliminary injunction dissolved, and Customs timely and properly liquidated Plaintiff's entries at the new antidumping duty rate pursuant to the judgment of the court.  *See id*. at 12-14.

## II.      Plaintiff's Contentions

Plaintiff requests that the Court "dismiss allegations seeking relief under 28 U.S.C. § 1581(i)."  XMSJ at 2.  Plaintiff also concedes that Customs never extended liquidation of the entries, pursuant to 19 U.S.C. § 1504(b), but also asserts that there was no basis for suspending the liquidation of the entries.  *Id*. at 3.  Plaintiff contends that "in the absence of a court order, no valid basis existed for suspension of liquidation of its entries, as no statutory authority required suspension of liquidation of Plaintiff's entries, in light of the fact that a valid antidumping [duty] order was in effect at the time Plaintiff made those entries."  *Id*. at 4.  Plaintiff asserts that 19 U.S.C. § 1673b(d)(2) did not provide a basis for suspension because the statute permits suspension only after an administrative review has resulted in "an affirmative determination by an administrating authority that additional anti-dumping duties must be imposed before suspension of

liquidation shall be ordered" and "no such affirmative determination in this matter as of the date that the notices of suspension of Plaintiff's entries was issued."  *Id*. at 4. Plaintiff urges that because there was no affirmative determination when it received the notices of suspension, Commerce lacked authority to suspend liquidation pursuant to 19 U.S.C. § 1504(a)(1).  *See id*. at 4-5.  Consequently, Plaintiff concludes that the entries were deemed liquidated, pursuant to 19 U.S.C. § 1504, in May and June 2007, at their originally asserted rate of duty.  *See id*. at 5-6.

III.   **Analysis**

A.   **The Statutory Scheme for Suspension of Liquidation in Antidumping Duty System**

Liability to pay antidumping duties "accrues upon entry of subject merchandise" into the Customs territory of the United States.  *SSAB N. Am. Div. v. U.S. Bureau of Customs & Border Protection*, 32 CIT 795, 797, 571 F. Supp. 2d 1347, 1350 (2008) (citing 19 C.F.R. § 141.1(a)).  While such liability accrues upon entry, the amount of actual liability may not be determined for some time after the entry occurs because the United States employs a 'retrospective' duty assessment system.  As Commerce explains in its regulations:

> the United States uses a 'retrospective' assessment system under which final liability for antidumping and countervailing duties is determined after merchandise is imported.  Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time.  If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

19 C.F.R. § 351.212(a).

The reference to the U.S. antidumping duty system as "retrospective" is a

convenient summation of an otherwise complex and technical interaction of statutory

provisions.  Focusing only on the provisions related to the suspension of liquidation, as

relevant to this case, the statutory suspension of liquidation begins with an affirmative

preliminary determination by Commerce in an antidumping duty investigation.

Specifically, 19 U.S.C. § 1673b(d)(2) provides that if a Commerce preliminary

determination is affirmative, then Commerce "shall order the suspension of liquidation of

all entries of merchandise subject to the determination which are entered […] for

consumption on or after […] the date on which notice of the determination is published

in the Federal Register."[3]  The suspension of liquidation ordered pursuant to this

provision may remain in effect no more than six months.  19 U.S.C. § 1673b(d).[4]  This

preliminary determination by Commerce will remain the legal basis for any suspension

of liquidation during the investigation until an antidumping duty order is issued.[5]

When both Commerce and the International Trade Commission ("ITC") make

affirmative final determinations in an investigation, Commerce is required to publish an

---

[3] The statute contains several provisions, not relevant to this case, which authorize a different start date for suspension of liquidation in different situations, for example, in the case of a preliminary finding of "critical circumstances," pursuant to section 1673b(e)(2), or an early preliminary determination, pursuant to section 1673b(d)(2)(B).

[4] These so-called "provisional measures" are subject to a four month expiration, extendable to six months at the request of exporters representing a significant proportion of exports of the subject merchandise.  19 U.S.C. § 1673b(d).

[5] Pursuant to section 1673d(c)(2), if either Commerce or the International Trade Commission issues a negative final determination, the investigation is terminated, the suspension of liquidation is terminated, bonds are released, and cash deposits are refunded.

antidumping duty order, pursuant to 19 U.S.C. § 1673e(a).  Among other things, the

antidumping duty order directs Customs to assess an antidumping duty on imports of

the subject merchandise based on the amount by which normal value exceeds the

export price "after the date on which [Commerce] receives satisfactory information upon

which the assessment may be based" and "requires the deposit of estimated

antidumping duties pending liquidation of entries of merchandise."[6]  Thus, the

antidumping duty order provides the legal basis for the suspension of liquidation of

imports of subject merchandise that enter for consumption on or after the date of

publication of that order, throughout the life of the order, and until the order is revoked.

While the antidumping duty order provides the on-going basis for the suspension

of liquidation of imports of subject merchandise, the suspension of liquidation for any

given entry is not indefinite.  Pursuant to 19 U.S.C. § 1673e(a), the antidumping duty to

be assessed on that entry is based on the amount by which normal value exceeds the

export price, as determined by Commerce.  That determination is made pursuant to

section 1675.

Section 1675 provides that, on an annual basis, Commerce may conduct a

review to determine the amount of any antidumping duty (referred to as an

administrative review or a periodic review). [7]  That antidumping duty is to be the basis of

---

[6] Section 1673e contains certain special rules, not applicable here, when the ITC makes
its affirmative finding on the basis of threat.

[7] Commerce only conducts such periodic reviews upon request (§ 1675(a)(1)), and, in
the absence of a request for review, Commerce generally will instruct Customs to
assess antidumping duties on the relevant entries at the cash deposit rate in effect at
the time of importation.  19 C.F.R. § 351.212(c); *see also Antidumping and*

the duty assessed on the entries during the review period (the earlier period of

transactions examined by Commerce in the administrative review) and the new

estimated antidumping duty rate (i.e., cash deposit rate) for future entries of subject

merchandise.  19 U.S.C. § 1675(a)(1).  It has long been recognized that the necessary

implication of reading section 1673e(a) together with section 1675, *in pari materia*, is

that the suspension of liquidation of an entry must remain in effect throughout an

administrative review by Commerce.  *Ambassador Div. of Florsheim Shoe v. United

States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984) (suspension of liquidation impliedly

required by statute during administrative review of countervailing duty order to

effectuate retrospective system of duty assessment); *Koyo Corp. v. United States*, 497

F.3d 1231, 1241-42 (Fed. Cir. 2007).

      The publication of the final results of the administrative review provides the notice

to Customs of the lifting of the suspension of liquidation.  *Int'l Trading Co.*, 281 F.3d

1268, 1275 (Fed. Cir. 2002).  Customs then has six months to liquidate the entries

covered by the results of the administrative review.[8]  19 U.S.C. § 1504(d).  If Customs

---

*Countervailing Duty Proceedings: Assessment of Antidumping Duties*, 68 Fed. Reg.
23954 (Dep't of Commerce May 6, 2003) (notice of policy concerning assessment of
antidumping duties) (explaining Commerce's policy with regard to the automatic
assessment of antidumping duties for imports of merchandise subject to an antidumping
duty order when an intermediary (*e.g.*, reseller, trading company, exporter) exports the
merchandise).

[8] In many cases, Customs cannot accurately assess antidumping duties based on the
public Federal Register notice.  The rates published therein constitute the weighted
average results of the review on the basis of all of the producer/exporter's shipments
during the period of review whereas Customs assesses antidumping duties on an
importer-specific basis.  Commerce provides the importer-specific assessment

does not liquidate within six months of the lifting of the suspension of liquidation, the

entries are deemed liquidated at the cash deposit rate in effect at the time of entry.  *Id*.;

*see Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1379 (Fed. Cir. 2002).

      If the final results of the periodic review are challenged at the Court of

International Trade, a party may request that the court enjoin the liquidation pending the

completion of court review.[9]  19 U.S.C. § 1516a(c)(2).  If enjoined, such entries shall be

liquidated in accordance with the final court decision in the action.  19 U.S.C.

§ 1516a(e).[10]  In these circumstances, the six month period in which Customs must

liquidate the entries may begin with publication of the Federal Register notice by

Commerce, pursuant to 19 U.S.C. § 1516a(c)(1), of the final and conclusive court

decision. 19 U.S.C. § 1504(d); *Fujitsu Gen. Am.*, 283 F.3d at 1382.

      **B.**    **The Statutory Scheme for Suspension of Liquidation Applied
to Plaintiff's Entries**

      The parties do not dispute any of the material facts.  The sole question before the

Court, therefore, is whether the liquidation of Plaintiff's entries was suspended until a

date no less than six months prior to when Customs liquidated them on August 10,

2012, at an antidumping duty rate of 145.90 percent.  The Court finds that the entries

---

instructions (usually on a business confidential basis), reflecting the final results of the administrative review, to Customs via a separate message.

[9] Special procedures exist in the case of a bi-national panel review pursuant to the NAFTA, which are not relevant here.  *See, e.g.*, 19 U.S.C. § 1516a(g)(5).

[10] If they are not enjoined, entries prior to the date of publication of any notice of a decision of this court or the CAFC not in harmony with the Commerce determination shall be liquidated (assessed) in accordance with the original agency determination.  19 U.S.C. § 1516a(c)(1).

were properly suspended from the time of entry until the completion of the judicial

review, first by operation of law pursuant to statute and then by court order pursuant to

a preliminary injunction, "until the issuance of a final and conclusive court decision," less

than six months prior to Customs' liquidation.  MSJ Ex. C at 2.

On November 17, 2004, based on the 2004 AD Order, Commerce directed

Customs to collect cash deposits of estimated antidumping duties on future imports of

hand trucks manufactured by Qingdao Taifa at a rate of 26.49 percent, pursuant to 19

U.S.C. §§1673d(c)(1) and 1673e.  When the subject merchandise entered the Customs

territory of the United States on May 24 and June 14, 2006 those instructions remained

in effect and the liquidation of the entries was automatically suspended.  This

suspension stayed in place until the anniversary month of the antidumping duty order.

As a result of the initiation of the second administrative review of the 2004 AD

Order, the liquidation of Plaintiff's entries was further suspended by the combined

provisions of 1673e(a) and 1675(a), as discussed *supra*, until the completion of the

review in order to determine the final amount of duties for the second period of review.

The cash deposits that Customs collected on the entries, at a rate of 26.49 percent,

were estimated antidumping duties announced in the 2004 AD Order.  *See* MSJ Ex. A.

On July 28, 2008, Commerce published the final results of the second administrative

review in the Federal Register.  *See Hand Trucks and Certain Parts Thereof from the*

*People's Republic of China*, 73 Fed. Reg. 43,684.

After Commerce issued the final administrative review results, Qingdao Taifa

timely brought suit to challenge the final results before this court.  On August 22, 2008,

pursuant to 19 U.S.C. § 1516a(c)(2), Qingdao Taifa secured a preliminary injunction,

which enjoined Customs from liquidating Plaintiff's entries, pending the resolution of that

challenge.  *Qingdao Taifa Group Co.*, No. 08-245 (CIT Aug. 22, 2008) (order granting

preliminary injunction).[11]  After several remands, on June 15, 2012, Commerce

published notice of the amended final results, which included an antidumping duty rate

of 145.90 percent for Plaintiff's entries.  *Hand Trucks from the People's Republic of*

*China*, 77 Fed. Reg. at 35,939.  The conclusion of the litigation dissolved the preliminary

injunction on July 11, 2012.[12]  *See* MSJ Ex E ¶ 1.  On August 10, 2012, Customs

liquidated Plaintiff's entries at a duty rate of 145.90 percent, in accordance with the

amended final results.

    Thus, from the moment of importation on May 24 and June 14, 2006, to the

conclusion of the administrative review on July 28, 2008, liquidation of Plaintiff's entries

was suspended by statute.[13]  Thereafter, during Qingdao Taifa's judicial challenge to

the administrative review results, until July 11, 2012, the court-issued preliminary

injunction continued the suspension of liquidation of the entries in question.  After the

---

[11] Had Qingdao Taifa not secured the preliminary injunction, Customs properly could have liquidated the entries and assessed antidumping duties at the rate of 383.60 percent, notwithstanding the on-going judicial review.  19 U.S.C. § 1516a(c)(1).

[12] The preliminary injunction dissolved with the issuance of a final and conclusive court decision.  The Federal Circuit's decision became final on July 11, 2012 when the deadline passed to seek review by the U.S. Supreme Court with no party filing a petition for a *writ of certiorari*.  *Fujitsu Gen. Am.,* 283 F.3d at 1379 ("there is not a final court decision until . . . the time for petitioning the Supreme Court for *certiorari* expires without the filing of a petition").

[13] To the extent that Plaintiff argues that an injury determination was required in the course of the administrative review, Plaintiff is wrong.  Plaintiff cites no authority for its proposition and the statute provides none.

removal of the suspension on July 11, 2012, Customs had six months, pursuant to 19

U.S.C. § 1504(d), to liquidate the entries in accordance with the revised antidumping

duty rate.  Because Customs liquidated Plaintiff's entries at the new antidumping rate on

August 10, 2012, well within the six month period beginning on July 11, 2012, the

entries were timely and properly liquidated at a duty rate of 145.90 percent, in

accordance with the amended final results.

CONCLUSION

For the reasons above, the court grants Defendant's Motion to Dismiss and

Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

Judgment will be entered for Defendant.


                                             /s/      Mark A. Barnett
                                             Mark A. Barnett, Judge

Dated: November 16, 2015
          New York, New York